UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TODD ANDREWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CAUSE NO. 1:04-CV-425 TS |
| vs. ) | |
| ) | |
| JAMES A. HERMAN, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Todd Andrews, a *pro se* prisoner, submitted a complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Weiss v. Colley*, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
>    In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

I.

Mr. Andrews alleges that as a pre-trial detainee he is housed in a two person cell with two other inmates, thereby requiring one of the three of them to sleep on the floor.[1] He further alleges that he is usually the inmate sleeping on the floor and that he has had to eat while sitting on the floor when there was an insufficient number of tables and chairs. Though the Eighth Amendment's prescription against cruel and unusual punishments applies only to persons convicted of crimes and though the rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause, "the recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the Eighth and Fourteenth Amendments" is the same. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003). A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eighth Amendment requires that prison officials ensure that inmates receive adequate food, clothing, and shelter, *Farmer* at 832, but conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of Constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-109 (7th Cir. 1971).

---

[1] Although Mr. Andrews repeatedly complains of sleeping on the floor, the review of his attached complaints to the jail commander about this matter reveals that he is sleeping on a mattress which is placed on the floor. *See* Pf's Comp. at 11.

Mr. Andrews does not allege, and based on this complaint it would not be reasonable to infer, that he and his cell mates are confined in the cell for the vast majority of the day and denied access to a larger common-area day room. While being celled with two other inmates, and sleeping and eating on the floor is undoubtedly inconvenient, uncomfortable, and unpleasant, it does not deny Mr. Andrews the minimal civilized measure of life's necessities and it does not violate his Constitutional rights:

> several courts in this circuit have found that the failure to provide an inmate with a bunk is not a constitutional deprivation. *See, Clagg v. Fairman*, 1997 WL 136684, *2 (N.D. Ill. March 24, 1997) (citing *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir.1986); *Hines v. Sheahan*, 845 F.Supp. 1265, 1269 (N.D. Ill.1994)); *Antonelli v. Sheahan*, 863 F.Supp. 756, 760 (N.D. Ill.1994) (collecting cases), *reversed in part on other grounds*, 81 F.3d 1422, 1430 (7th Cir.1996). In fact, Magistrate Judge Cosbey of this Court in *Thomas v. Squadrito*, 98-CV-240, slip op. p. 12 (August 6, 1999) recently said as much: "the bunk the Plaintiff aspired to in the Allen County Jail is nothing more than a suspended steel platform, and this can hardly be characterized as any great improvement over a concrete floor.

*Roop v. Squadrito*, 70 F. Supp.2d 868, 874 (N.D. Ind.1999)

Mr. Andrews alleges that in August 2004, there were several other cells with empty bunks, but that his repeated requests to be reassigned from the floor to one of those cells were denied. Assigning Mr. Andrews to sleep on the floor did not violate the Constitution, and though it might seem irrational to require him to remain on the floor when there were empty bunks, doing so does not change the legal analysis that sleeping on the floor did not deny him the minimal civilized measure of life' necessities. "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997).

Mr. Andrews alleges that in October 2004, a fellow inmate's request to be moved from the floor to a bunk was granted.

> Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Whitley v. Albers*, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted). Though Mr. Andrews may not understand why his request (some three months earlier) was denied, and while he may not understand why the other inmate's request was granted, jails are to be afforded wide-ranging deference in individual housing decisions.

## II.

Mr. Andrews alleges that there are only two showers for up to sixty inmates. Mr. Andrews does not allege, and based on this complaint it would not be reasonable to infer, that he has been denied access to a shower to the extent necessary to maintain his basic hygiene. Therefore, even if the number of showers is below that set by a rule or policy, the Constitution only requires that Mr. Andrew's not be denied the minimal civilized measure of life's necessities.

Mr. Andrews alleges that the showers are cleaned infrequently and are regularly dirty. He does not allege, and based on this complaint it would not be reasonable to infer, that he was actually injured because of the dirty showers. Merely observing, but not being injured by, potentially dangerous conditions, does not state a claim. *See Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000) ("Because he cannot show injury, he cannot make out a claim of deliberate indifference.").

## III.

Mr. Andrews alleges that he chose to wash his underwear in the toilet rather than wait for access to other washing options. Though Mr. Andrews alleges that his options were limited because of the number of inmates on his cell block, he nevertheless chose to use the toilet rather than wait

4

for a more reasonable way to clean his underwear. An inmate does not state a claim where his own choice caused the alleged deprivation. *See Rodriguez v. Briley*, ___ F.3d ___, 2005 U.S. App. LEXIS 6152 (7th Cir. 2005) ("[D]eliberate noncompliance with a valid rule does not convert the consequences that flow automatically from that noncompliance into punishment.")

IV.

Mr. Andrews alleges that he has only been allowed to go to recreation once during the past year.

> [The plaintiff] claims only to have been deprived of yard or recreation time, not all exercise. In modern prisons the denial of recreation time may deprive inmates of many desirable, entertaining diversions the lack of which would not raise a constitutional issue.

*Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988). Mr. Andrews does not allege, and based on this complaint it would not be reasonable to infer, that he has been denied the opportunity to exercise.

V.

Mr. Andrews alleges that he has witnessed inmate fights which were not stopped by guards. Merely observing, but not being injured by, potentially dangerous conditions, does not state a claim. *See Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000). Furthermore, even if Mr. Andrews was afraid for his own safety, he does not allege that he was attacked and the fear of an attack that never occurs does not state a claim for damages. *Doe v. Welborn*, 110 F.3d 520, 523-24 (7th Cir. 1997).

VI.

Mr. Andrews alleges that his children, who are under 18 years of age, have not been allowed to visit him. The Constitution does not require visitation whether by children or adults.

5

> [S]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters.

*Block v. Rutherford*, 468 U.S. 576, 584–85 (1984) (quotation marks, brackets and citations omitted).

> Detainees—by definition persons unable to meet bail—often are awaiting trial for serious, violent offenses, and many have prior criminal convictions. Exposure of this type person to others, whether family, friends, or jail administrators, necessarily carries with it risks that the safety of innocent individuals will be jeopardized in various ways. They may, for example, be taken as hostages or become innocent pawns in escape attempts. It is no answer, of course, that we deal here with restrictions on pretrial detainees rather than convicted criminals. For, as we observed in *Wolfish*, in this context, there is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, we said, it may be that in certain circumstances detainees present a greater risk to jail security and order.

*Id*. at 586—87 (1984) (quotation marks, citation, and brackets omitted). Children are, of course, different than adults both in the risks they pose within a jail and the risks that a jail poses to them: physically and psychologically. Mr. Andrews does not allege, and based on this complaint it would not be reasonable to infer, that child visitation at the jail was prohibited as punishment rather than for reasonable, legitimate reasons.

## VII.

Mr. Andrews alleges that he has been denied access to a law library. The records of this court demonstrate that Mr. Andrews was represented by counsel on his federal criminal charges. There is no "abstract, freestanding right to a law library . . . [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Because he was represented by counsel, Mr. Andrews was not denied access to the court in regard to his criminal case.

In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court repudiated language in earlier case law and held that the constitution's guarantee of access to the courts requires state actors to assure that prisoners have access to courts to present claims concerning the legality or conditions of their confinement, but state actors have no duty to assure that prisoners can litigate those claims effectively once they have been raised in court. The right to access, goes no further than access.

> It must be acknowledged that several statements in *Bounds* went beyond the right of access recognized in the earlier cases on which it relied, which was a right to bring to court a grievance that the inmate wished to present . . . . These statements appear to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court. . . . These elaborations upon the right of access to the courts have no antecedent in our *pre-Bounds* cases, and we now disclaim them.

*Lewis v. Casey*, 518 U.S. at 354. *Lewis* only requires that an inmate be given access to file a complaint or appeal, but state actors have no duty to assure that prisoners can litigate those claims effectively once they have been raised in court. That is to say, *Lewis* does not require that Mr. Andrews ever be permitted access to the law library, only that he be permitted to file a complaint or appeal. Indeed, the records of this court demonstrate that Mr. Andrews did file several lawsuits while he was held at the jail. Mr. Andrews does not allege, and based on his complaint it would not be reasonable to infer, that he was denied the opportunity to file a civil complaint or appeal.

## VIII.

For the foregoing reasons, this case is **DISMISSED** pursuant to 28 U.S.C. §1915A.

SO ORDERED on June 8, 2005.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

7